Anthony V. Donisi and Janet L. Donisi v. Commissioner. Anthony V. Donisi, Inc. v. Commissioner.
Donisi v. Commissioner
Docket Nos. 4206-64, 4228-64.
United States Tax Court
T.C. Memo 1967-62; 1967 Tax Ct. Memo LEXIS 199; 26 T.C.M. (CCH) 327; T.C.M. (RIA) 67062; March 31, 1967
Charles B. Ginocchio, 810-14 Mercantile Library Bldg., Cincinnati, Ohio, for the petitioners. Richard M. Schwartz, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent has determined deficiencies in petitioners' income taxes and additions to tax as follows: [1]
Taxable year
Additions to tax
Petitioners
ended
Income tax
(Sec. 6651(a))[2]
Anthony V. Donisi and Janet L. Donisi
Dec. 31, 1960
$6,799.96
$1,19.99
Anthony V. Donisi, Inc.
Mar. 31, 1960
5,630.28
Mar. 31, 1961
2,407.61
*200 After concessions on the part of both parties, [3] the issues remaining for our decision are: (1) Whether petitioner corporation is entitled to certain claimed interest deductions under section 163 for payments made to petitioner husband. (2) Whether certain payments received by petitioner husband from petitioner corporation represented dividends to the extent of petitioner corporation's earnings and profits. Findings of Fact Some of the facts have been stipulated and are found accordingly. Anthony V. Donisi and Janet L. Donisi had their legal residence in Cincinnati, Ohio, at the time of the filing of the petition in *201 Docket No. 4206-64. As husband and wife, they filed for the year 1960 a joint Federal income tax return utilizing the cash basis with the district director of internal revenue, Cincinnati, Ohio. Any reference to "Donisi" will be to Anthony, Janet being a party to the proceedings herein solely by reason of having joined in the return. Anthony V. Donisi, Inc., hereafter referred to as the "Corporation," is a corporation duly organized and existing under the laws of the State of Ohio with its principal place of business located at the time of the filing of the petition in Docket No. 4228-64 in Loveland, Ohio. For its fiscal years ended March 31, 1960 and March 31, 1961 (hereafter referred to as its taxable years 1960 and 1961, respectively), the Corporation reported income on the accrual basis and filed its income tax returns with the district director of internal revenue, Cincinnati, Ohio. The Corporation was incorporated on April 27, 1959 for the purpose of manufacturing mirrors and commenced business on May 4, 1959. Fifty shares were issued to Donisi as of May 1, 1959 for $25,000. No other shares have been issued. Donisi was the president, a director, and sole shareholder of *202 the Corporation at the time of its incorporation and throughout its taxable years 1960 and 1961. On January 8, 1959 and on March 6, 1959, Donisi borrowed an aggregate amount of $33,500 at 5 percent interest from North-western Mutual Life Insurance Company against the cash surrender value of two policies owned by him. At an undisclosed date, the loans were repaid by surrender of the policies. Between May 11, 1959 and May 28, 1959, Donisi borrowed $36,864 at an undisclosed interest rate from the Pacific Mutual Life Insurance Company against four life insurance policies owned by him. Loans aggregating $28,396 against three of the four policies were repaid by the surrender of two policies on June 8, 1960 and a third policy on July 7, 1960. The proceeds of the foregoing loans were deposited in Donisi's personal checking account. Donisi then transferred the $36,864 proceeds of the Pacific Mutual loans to the Corporation, which treated such proceeds as follows: Par value of the 50 shares
$ 250.00
Paid-in surplus
24,750.00
Loan from petitioner
11,864.00
On May 4, 1959, a resolution was adopted by the shareholder of the Corporation, which, where pertinent, reads *203 as follows: No. 2. Be it resolved that this corporation acquire from Anthony V. Donisi the land and improvements owned by him on Loveland Road at Loveland, Ohio, all contract rights owned by him for the improvements thereof, all machinery, fixtures, equipment, supplies, and inventory, owned by him for use in the mirror manufacturing business or which he may have contracted to acquire for said purpose. Be it further resolved that the price to be paid by this Corporation to the said Anthony V. Donisi for said real and personal property be the cost thereof to the said Anthony V. Donisi. Be it further resolved that the purchase price of said property be paid either in cash or by notes of this corporation or by open account with said Anthony V. Donisi. Be it further resolved that any of said notes or said account bear interest at the rate or rates on which the said Anthony V. Donisi is required to pay on monies borrowed by him for the purpose of acquiring said real and chattel property. Be it further resolved that this corporation borrow from said Anthony V. Donisi and from other sources, such further sums on money and on such terms and conditions as the President or Vice President may *204 determine advisable. Be it further resolved that evidences of the indebtedness hereby authorized may be signed by the President, Vice President, Treasurer or Secretary. Title to the real property in Loveland, Ohio, covered by the above resolution, was taken by Donisi in his own name on June 27, 1959. Of the purchase price, $12,800 was paid by Donisi personally and $7,678.98 was paid to the seller directly by the Corporation. On July 15, 1959 and April 16, 1960, Donisi borrowed $25,000 and $30,000, respectively, at an undisclosed interest rate from the Milford National Bank and executed mortgages to the bank on the property. The property was carried as an asset at $12,800 on the Corporation's books as of May 1, 1959 with an offsetting account payable in the same amount in favor of Donisi, although title to the property was not deeded by Donisi to the Corporation until May 25, 1960. From December 19, 1958 through 1961, Donisi made advances to the Corporation and also expenditures for the Corporation (those made prior to incorporation were made in anticipation of that event) for equipment and inventory, construction costs, operating expenses, and general corporate purposes. Such advances *205 and expenditures were made at irregular intervals and in irregular amounts as and when needed to meet the Corporation's obligations and operating expenses or to purchase assets required in the Corporation's business. The following is a summary of these advances and expenditures: Period ended
Description
12/31/59
12/31/60
12/31/61
3/31/62
Advances to the Corporation
$48,844.00
$40,213.42
$19,639.00
$12,921.32
Expenditures for the Corporation
90,131.25
3,374.18
1,720.16
10,032.67
Apart from the deed to the real property in Loveland and entries made in the general ledger and cash journal showing an open account payable, there was no documentary evidence (such as bills of sale) that the Corporation had purchased any items from Donisi. No part of the advances made by Donisi to the Corporation and no part of the payments for the benefit of the Corporation were evidenced by any written instrument other than the described account payable. Donisi did not receive any security for the advances or payments. There was no fixed time or date for repayment. From time to time during the taxable years, the account payable to Donisi was decreased by cash *206 withdrawals made by Donisi, by payments by the Corporation on Donisi's behalf for personal and sundry items, and by withdrawals and payments by or on behalf of members of Donisi's family. Such withdrawals and payments were at irregular intervals and in irregular amounts not correlated with specific credits to the account payable. The amounts withdrawn from or paid by the Corporation are summarized as follows: Period ended
Description
12/31/59
12/31/60
12/31/61
12/31/62
Cash withdrawn by Donisi
$ 5,120.00
$27,099.00
$12,202.26
$ 5,805.00
Payment to Donisi as "interest"
5,369.04
8,658.38
Payment of personal bills of Donisi
242.93
32,271.10
56,137.35
13,186.22
Payment of Donisi's indebtedness to
Acme Glass Company [4]
$ 9,519.21
*207 All of the advances and/or payments made by Donisi to or on behalf of the Corporation and the withdrawals therefrom were commingled in the one account payable. On June 4, 1960, which was within 75 days after the close of the Corporation's taxable year 1960, the Corporation paid Donisi $5,369.04 as 6 percent "interest" allegedly owed for its taxable year 1960 on the loans from Donisi. On June 11, 1960, seven days later, Donisi advanced funds to the Corporation in the amount of $6,000. Similarly, on June 13, 1961, the Corporation paid Donisi $8,658.38, allegedly as 6 percent "interest" due on the amount it owed Donisi during its taxable year 1961. On June 17, 1961, four days later, Donisi advanced $8,600 to the Corporation. The "interest" for the Corporation's taxable year 1960 was computed at a monthly basis at the close of the year; the interest for the taxable year 1961 was computed and accrued monthly on the Corporation's books. The Corporation made timely payments of amounts due its creditors. In the taxable years ended March 31, 1960 and March 31, 1961, Donisi received a salary from the Corporation in the amounts of zero and $3,600, respectively. Respondent determined *208 that Donisi received dividend income from the Corporation in 1960 of $12,740.83, computed by subtracting the $124,851.74 which the Corporation owed petitioner on January 3, 1961 from the $137,592.57 that it owed him on January 7, 1960. [5] The earnings and profits of the Corporation for 1960 were sufficient to cover the amount asserted by respondent to be dividends. Ultimate Finding of Fact The advances made by Donisi to or for the benefit of the Corporation were in the nature of "equity" and did not constitute bona fide debts owed by the Corporation to petitioner. Opinion The two issues before us - i.e., the propriety of the Corporation's "interest" deduction under section 163 and the nature of the distributions to Donisi - both depend upon determination of one question. Are the amounts which Donisi advanced to, or for the benefit of, the Corporation to be recognized for tax purposes as loans to, or for the benefit of, the Corporation or as "equity" which was placed at the risk of the Corporation? The *209 development of criteria by which this oft-asked question should be answered has been a plaguing problem for the courts. The use of various criteria does not dilute the fundamental tenet that this question is one of fact. E.g., (C.A. 2, 1945). "There is no one characteristic * * * which can be said to be decisive." See . We see no purpose to be served by enumerating a list of criteria, as is often done. See, e.g., (C.A. 9, 1960). What tests and individual elements are of prime importance in one set of circumstances may not be in another. Rather, we prefer to limit our observations to the specific facts of this case which we consider to be of particular significance in our determination that the advances were in the nature of equity. Our enumeration does not necessarily reflect the order of importance. Donisi's advances to, and expenditures for the benefit of, the Corporation were evidenced only by an increase in the account payable to Donisi on the corporate books. No notes or other *210 written evidence of indebtedness were issued. Nor was any of the amount owed to Donisi secured, in spite of the fact that many of the assets which he transferred or paid for were of a kind which normally are considered excellent security. There was no schedule of repayment either as to time or amount, leaving the impression that such advances were to remain at the risk of the business indefinitely. The only specific evidence that we can find is the rather vague corporate resolution to pay interest "at the rate or rates on which the said Anthony V. Donisi is required to pay on monies borrowed by him for the purpose of acquiring real and chattel property." But, even here, there is no evidence of the interest rate on the borrowings of Donisi other than the 5 percent rate on the loans of Northwestern Mutual Life Insurance Company and the 6 percent interest on excess withdrawals called for by the partnership agreement of Acme Glass Company. Clearly, the corporate resolution was not followed with respect to the Northwestern Mutual loans and there is no evidence that Donisi ever was actually required to pay the interest on the excess withdrawals from Acme Glass, a family partnership (see *211 footnote 4, supra). We have also found that Donisi's transfers, advances, and expenditures were necessary to enable the Corporation to meet daily operating expenses and obligations as well as to acquire the land, building and equipment essential to the physical conduct of its business. Even though lack of formality is not necessarily fatal, we cannot ignore the informality of the arrangements between Donisi and the Corporation. For example, Donisi did not transfer certain real estate to the Corporation until one year after it had been entered on the corporate books as belonging to the Corporation, during which period Donisi personally took out two loans using the land as collateral. Donisi drew salary of only $3,600 during the periods in question while withdrawing almost $100,000 for his personal use and benefit or that of members of his family. [6]
*212 Donisi argues that the source of the funds advanced to the Corporation was his own borrowings and that a failure of the Corporation could bankrupt him, so that he therefore intended to maintain a creditor status to protect his personal assets. But Donisi's testimony is utterly silent on the question of intention, although we recognize that to a large extent any such testimony might have been considered self-serving. Moreover, we think it not without significance that three of the four Pacific Mutual policies were surrendered by July 1960, so that Donisi could no longer be said to be protecting them. The same can be said of the Northwestern Mutual policies which were also surrendered - for aught that appears, at or prior to the same date. The claim is asserted that Donisi was acting as a banker, lending money as the Corporation needed it and accepting repayment when it was in a position to repay. While we doubt that, if this were found to be true, it would of itself have offset the other characteristics of "risk capital" here present, Donisi has totally failed to prove his claim. Instead, the record indicates clearly that "repayments" came when Donisi needed the money rather than *213 when the Corporation could afford to pay. It is also suggested on brief that conceivably Donisi might have been repaid in full and later re-loaned large amounts to the Corporation. Aside from the obvious response that the burden was on petitioners to show that such was the case, the fact is that the record clearly indicates that at all times there was a substantial balance in Donisi's favor. Finally, we are not impressed with petitioners' argument that the ratio of the so-called "debt" to capital of 4:1 or 5:1 is less than the ratio involved in other cases which have held that an indebtedness existed. The decided cases do not establish any magic or sanitized ratio from which a determination automatically follows. We think it more significant that the balance in favor of Donisi as at March 31, 1960 and March 31, 1961 represented a claim in excess of 30 to 40 percent of the book value of the Corporation's assets (and there is no evidence that the actual value was any greater) whereas the $25,000 capital represented only slightly over 7 percent of such value. On the totality of the evidence, we hold that the advances and expenditures by Donisi to the Corporation were in the nature *214 of "equity" rather than indebtedness, with the result that the so-called "interest" is not deductible by the Corporation, and the net amount of repayments in 1960 constituted dividends. Decisions will be entered under Rule 50. Footnotes
1. At the trial, respondent abandoned a request for an increased deficiency for 1960 with respect to the individual petitioners, as set forth in amendments to the answer. ↩
2. All references are to the Internal Revenue Code of 1954.↩
3. The individual petitioners have conceded the propriety of an addition to tax asserted against them if a deficiency is found and petitioner corporation has conceded a disallowance of all but $410 of the bad debt deduction for its fiscal year ended March 31, 1961. Respondent, in turn, concedes that $140 is allowable.↩
4. Acme Glass Company is a partnership of which Donisi was a partner, along with other members of his family. It manufactured a higher quality mirror than the Corporation. Donisi raised some of the funds he advanced to or for the benefit of the Corporation by overdrawing on his Acme partnership account. According to the Acme articles of partnership, Donisi owed 6 percent interest on the overdrawn funds.↩
5. The respondent has therefore "netted" Donisi's withdrawals against his advances to the Corporation rather than including the gross amount withdrawn by him during 1960.↩
6. Respondent calls our attention to the fact that petitioner re-advanced to the Corporation, within a period of days, the amounts paid to him as "interest." We are constrained to note that section 267 required these payments to be made within 75 days of the end of the Corporation's taxable year. Obviously, the Corporation was still in need of funds.↩